AO 91 (Rev. 11/11) Criminal Complaint

| | | | |
|---|---|---|---|
| AUSA: | William Orr | Telephone: | (989) 895-5712 |
| Special Agent: | Kyle McGraw | Telephone: | (810) 341-5710 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
  v.
Brandon Sharpe,

Case No. 1:24-mj-30280
Judge: Morris, Patricia T.
Filed: 07-22-2024

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 8, 2024 to June 24, 2024 in the county of Gratiot in the Eastern District of Michigan, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 922(o) | Possession of a Machine Gun |
| 18 U.S.C. § 922(a)(1) | Engaging in the business of dealing firearms without a license |
| 26 U.S.C. § 5861(e) | Transferring a firearm in violation of the National Firearms act. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Special Agent Kyle McGraw, ATF
*Printed name and title*

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: July 22, 2024

*Judge's signature*

City and state: Bay City, Michigan

Hon. Patricia T. Morris, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A CRIMINAL COMPLAINT

I, Kyle McGraw, being first duly sworn, hereby depose and state as follows:

## EXECUTIVE SUMMARY

1. The Bureau of Alcohol, Tobacco, Firearms, and Explosives is conducting an investigation into the arrest of Brandon James SHARPE (XX/XX/1995). SHARPE has been found to be manufacturing and selling full-auto rifles and privately manufactured pistols and rifles. SHARPE has sold during the course of this investigation, eleven firearms and eight swift links to convert several of the firearms to function in a fully automatic capacity. SHARPE is not a prohibited person; however he does not have a valid Federal Firearms License to manufacture and sell firearms, nor does he have any NFA firearms registered in his name. Based on the information in this affidavit there is probable cause to believe that between May 8, 2024 and June 24, 2024 , SHARPE was in violation of Title 18 U.S.C. §922(o) – possession of a machine gun, Title 18 U.S.C. § 922(a)(1) – Engaging in the business of dealing firearms without a license, and Title 26, United States Code 5861(e) (transferring a firearm in violation of the National Firearms Act)

## INTRODUCTION AND BACKGROUND

2. I am a Special Agent employed with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), U.S. Justice Department, and have been so employed since November 7, 2016. I successfully completed the Criminal

1

Investigations Training Program (CITP) at the Federal Law Enforcement Training Center (FLETC), Brunswick, Georgia. I also completed the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training (SABT) National Training Academy conducted in Brunswick, Georgia. During these courses of study, I received training in the investigation of federal firearm and narcotics violations. Previously, I was a certified law enforcement officer in Michigan with the City of Saginaw Police Department and the Saginaw Township Police Department for a total of five years. During which time, I spent two years on the Bay Area Narcotics Enforcement Team (BAYANET) enforcing state narcotics and firearms violations. I personally investigated and assisted in numerous of cases, which led to search warrants, arrests, prosecutions, and the seizure of large quantities of narcotics and firearms. During my employment with ATF, I have conducted or participated in investigations related to the possession and manufacture of firearms and narcotics in violation of Titles 18, 21, and 26 of the United States Code.

3. I make this affidavit from personal knowledge based on my participation in this investigation, communications with the Bridgeport Township Police Department, and others who have personal knowledge of the events and circumstances described herein, and information gained through my review of relevant documents related to this investigation. The information outlined below is

provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation.

## PORBABLE CAUSE

4. In April 2024, the Michigan State Police and ATF agents began an investigation into Brandon James SHARPE (WM DOB: XX/XX/XX95), for the sale of full auto firearms and firearms being privately manufactured and sold. Law enforcement received information from an ATF Confidential Source (hereafter SOI[1]), SHARPE is manufacturing firearms utilizing a 3D printer and 80% lowers for private sale. He was also providing "swift link" or "drop in auto sears" with the rifles which converted them to full-auto weapons. SOI-1 confirmed they had witnessed the firearms possessed by SHARPE to function in a full-auto manner.

5. Based upon the aforementioned information, SOI and detectives arranged to conduct a controlled purchase of firearms and drop in auto sears, from SHARPE. On May 8, 2024, prior to the purchase, SOI met with detectives and they searched their person and vehicle for weapons, narcotics, or currency, finding none. They placed a phone call to SHARPE at (989)209-0160 to facilitate the purchase. It

---

[1] SOI-1 is a cooperating source who is working in consideration for a reduction in charges. SOI-1 has current pending charges of Distribution of Narcotics less than 50 grams in Gratiot County. SOI-1 has provided information to law enforcement which has been corroborated and shown to be reliable.

3

was agreed upon to meet at the Pine River Inn at 2454 E Monroe Road, Alma, MI in Gratiot County.

6. Detectives provided SOI with prerecorded buy funds and a covert recording device. Law enforcement searched the motel room where the transaction was to take place was also searched prior to the SOI's arrival and found no contraband. Detectives then surveilled SOI directly to the Pine River Inn Motel. Shortly after the SOI arrived, detectives observed a black Dodge Ram Pickup parking in front of the motel room. A male exited the truck, later identified as SHARPE, and entered the SOI's motel room for several minutes before departing in the truck The SOI then met with SA McGraw and Gatza following the controlled purchase.

7. The SOI turned over the covert recording device and the purchased evidence. The SOI turned over a Drop in Auto sear for a rifle and a lower receiver with a drop in auto sear installed. The SOI, their vehicle, and the motel room were again searched for contraband, none of which were located. The SOI stated he/she arrived at the motel room and waited until SHARPE arrived and entered the room. He/She provided SHARPE with the prerecorded buy funds in exchange for the lower receiver and drop in auto sear. SHARPE gave the items to the SOI and installed the drop in auto sear into the lower receiver.

8. On May 23, 2024, law enforcement arranged another controlled purchase with Sharpe. Prior to the purchase, SOI met with detectives and was searched for weapons, narcotics, or currency on their persons, none of which was located. The SOI agreed to introduce an undercover agent (UCA) to SHARPE and the UCA would purchase the firearms. The UCA and SOI spoke to SHARPE on the phone and agreed to meet at the Alma Motel at 1575 Wright Avenue, Alma, MI to conduct the controlled purchase.

9. The UCA was provided with prerecorded buy funds and covert recording devices were managed by the UCA in the motel room. The motel room where the transaction was to take place was also searched prior to the controlled purchase. The UCA and SOI were then surveilled directly to the Alma Motel from the meeting location. The UCA and SOI entered their room where they remained in the area until SHARPE was observed arriving in the same Black Dodge Ram Pickup truck as the prior deal. SHARPE exited the driver's seat of the truck and entered the motel room with a duffle bag in his hand. He exited the room for a short time retrieving something from the truck where a passenger was observed in the front seat, before returning to the room. He remained inside for a period of time before exiting and departing the area with his passenger in the truck. The UCA and SOI then departed the area with the evidence and met with law enforcement at a predetermined meeting location.

10. The UCA gave SA McGraw the purchased evidence, consisting of a rifle with an obliterated serial number, a drop in auto sear, and a privately manufactured Derringer .22 pistol. The UCA stated he/she and the SOI met with SHARPE inside the motel room where he brought in a bag with the purchased evidence inside of it. The UCA explained SHARPE provided him/her with the evidence and explained to the UCA he was able to get the rifle to fire 2-3 shots at a time, indicating it operated in a full-auto capacity. SHARPE then realized he left the drop in auto sear in his truck and left the room to retrieve it. He returned and provided the Drop in auto sear which he explained was made especially for the rifle. Sharpe then put it in the rifle and showed the UCA how to install it. The UCA and SHARPE then discussed purchasing additional rifles with drop in auto sears and SHARPE said he has enough lowers "to supply a small army". Sharpe then provided the UCA with the small Derringer pistol, he explained he hasn't shot it yet, but it took him nine hours to make it. The UCA inquired about full-auto pistols and the two discussed SHARPE making a switch for the pistol. SHARPE told the UCA he can only make them so when the trigger is pulled it goes through the entire magazine without stopping. The UCA and SHARPE discussed purchasing additional firearms at a future date. SHARPE then departed the area in the truck.

11. On June 10, 2024, a third controlled purchase took place between the SOI and SHARPE at 6343 West Fillmore Road, Ithaca, Michigan in Gratiot County.

6

SOI met with detectives and was searched for weapons, narcotics, or currency on their persons, a quantity of US Currency was located and held onto by detectives until after the purchase.

12. The SOI was provided with prerecorded buy funds and a covert recording device. It should be noted the covert recording device malfunctioned and there is no recording. The SOI was then surveilled directly to the driveway of the target residence by law enforcement from the meeting location. The SOI exited their vehicle and met with a male, later identified as SHARPE and two other males. The four individuals then entered a shed on the property where they remained for a period of time. The SOI was then observed departing the shed with a box in their hands and left the residence in their vehicle and were surveilled back to the predetermined meeting location by law enforcement.

13. The SOI turned over three lower receivers, three upper receivers, and three drop in auto sears, also defined as "swift links", or conversion devices to enable the firearms to fire in a fully automatic capacity. The SOI stated the firearms had been all assembled when he/she met with SHARPE in the shed, but after the SOI provided SHARPE with the prerecorded buy funds in exchange for the firearms, SHARPE had broken the firearms down and wiped them down to avoid his fingerprints being on the property before giving them to the SOI.

14. On June 24, 2024, SOI and the UCA again conducted a controlled purchase from SHARPE. Several days prior, the SOI and SHARPE had communicated regarding firearms SHARPE could build for the UCA. The SOI met with law enforcement at a predetermined meeting location and was searched for any weapons, contraband, or US Currency, none of which was located. The SOI was contacted by SHARPE asking where the SOI was at and to hurry. The SOI and UCA were provided with prerecorded buy funds and several pieces of covert recording equipment. The SOI was aware of the recording capabilities and agreed to utilize the equipment. The SOI and UCA departed in the UCA's vehicle and were surveilled directly to 6343 West Fillmore Road.

15. The UCA and SOI were observed entering a shed on the property with a male, later identified as SHARPE. They remained at the property for a period of time before being observed leaving the shed with the UCA carrying something in their arms and entering the UCA's vehicle with the SOI and departing. The UCA and SOI were surveilled back to the predetermined meeting location where the SOI was again searched with nothing located on their person. The property was turned over to SA McGraw, which included two privately manufactured 5.56 caliber Short Barrel Rifles with swift links installed, a privately manufactured 5.56 rifle with a privately manufactured suppressor attached, a privately manufactured 3D printed .9mm luger Glock-17 style pistol, and a Zastava, Model 59/66 semi-automatic rifle,

7.62/39mm caliber rifle. The UCA provided SHARPE with the prerecorded buy funds in exchange for the aforementioned firearms while in the shed at the residence. They discussed purchasing additional firearms in the future all of which SHARPE indicated he could manufacture for the UCA.

16. A machine gun for the purposes of the National Firearms Act (NFA) under Title 26 U.S.C. § 5845(b) is defined as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

17. As described in the aforementioned controlled purchases, the drop in auto sears, or swift links which were purchased from SHARPE are defined as machineguns. An AR-type machinegun conversation device can be a part, or combination of parts, designed and intended for use in converting a semiautomatic weapon into a machinegun; therefor such item is a "machinegun" as defined in 26 U.S.C. § 5845(b). AR-type machinegun conversion devices manufactured after May 19, 1986, may only be lawfully possessed by a licensed Federal Firearms Licensee.

18. A "Swift-Link" can be made in approximately 5 minutes utilizing a heat gun to warm the device material and, using thumb pressure and linesman pliers to make four pends at specific points, which will then classify it as a "machine gun" under federal law.

9

19. Based on the foregoing, I have probable cause to believe that between May 8, 2024 and June 24, 2024, in the Eastern District of Michigan, Brandon SHAPE was in violation of 18 U.S.C. §922(o) – possession of a machine gun and 18 U.S.C. § 922(a)(1) – Engaging in the business of dealing firearms without a license, and Title 26, United States Code 5861(e) (transferring a firearm in violation of the National Firearms Act).

Respectfully submitted,

Kyle McGraw, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my presence and/or by reliable electronic means on _____July 22, 2024_____.

Hon. PATRICIA T. MORRIS
UNITED STATES MAGISTRATE JUDGE

10